## Table of Contents

I. SUMMARY OF ARGUMENT ........................................................................................... 1

II. STATEMENT OF FACTS ................................................................................................. 3

III. ARGUMENT ...................................................................................................................... 6

   A. Legal Standard ............................................................................................................. 6

   B. The '073 Patent Is Invalid Under 35 U.S.C. § 101 ...................................................... 7

      1. The only independent claim of the '073 Patent fails the machine-or-transformation test. ................................................................................................... 8

      2. The only independent claim of the '073 Patent is an abstract idea. .............................. 13

      3. The dependent claims of the '073 Patent are also unpatentable. ................................... 15

IV. CONCLUSION .................................................................................................................. 16

## Table of Authorities

**Cases**

*Accenture Global Services, GmbH v. Guidewire Software, Inc.,*
   F.3d, 2013 WL 4749919 (Fed. Cir. Sep. 5, 2013) ............................................................ 11, 12

*Accenture Global Servs. GmbH v. Guidewire Software, Inc.,*
   691 F. Supp. 2d 577, 597-98 (D. Del. 2010) ..................................................................... 8, 12

*Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Can.,*
   771 F. Supp. 2d 1054 (E.D. Mo. 2011) ....................................................................... 7, 8, 9, 11

*Bilski v. Kappos,*
   130 S. Ct. 3218 (2010) ........................................................................... 1, 7, 9, 12, 13, 14, 15

*BuySAFE, Inc. v. Google, Inc.,*
   F.Supp.2d, No. 11–1282–LPS, 2013 WL 3972261, at *3-4 (D. Del. July 29, 2013) ......... 12, 13

*CLS Bank Int'l v. Alice Corp. Pty. Ltd.,*
   717 F.3d 1269 (Fed. Cir. 2013) .................................................................................................. 7

*CLS Bank Int'l v. Alice Corp. Pty. Ltd.,*
   768 F. Supp. 2d 221 (D.D.C. 2011) ..................................................................... 7, 9, 10, 12, 15

*CyberSource Corp. v. Retail Decisions, Inc.,*
   620 F. Supp. 2d 1068 (N.D. Cal. 2009) .................................................................................... 7

*CyberSource Corp. v. Retail Decisions, Inc.,*
   654 F.3d 1366 (Fed. Cir. 2011) ........................................................................ 7, 8, 9, 12, 13, 14

*Dealertrack, Inc. v. Huber,*
   674 F.3d 1315, 1317 (Fed. Cir. 2012) ................................................................................ 14, 15

*Diamond v. Diehr,*
   450 U.S. 175, 191-92 (1981) ................................................................................................... 14

*Digitech Image Technologies, LLC v. Electronics for Imaging, Inc.,*
   No. 8:12–cv–1324–ODW, 2013 WL 3946579, at *6-7 (C.D. Cal. July 31, 2013) ............ 12, 13

*Ex Parte Cherkas,*
   No. 2009-11287, 2010 WL 4219765, at *3 (B.P.A.I. Oct. 25, 2010) ........................................ 9

*Fleming v. Pickard,*
   581 F.3d 922, 925 (9th Cir. 2009) ............................................................................................. 6

*Glory Licensing LLC v. Toys R Us, Inc.*,
   No. 09-4252 (FSH), 2011 WL 1870591 (D.N.J. May 16, 2011) ............ 7

*Gottschalk v. Benson*,
   409 U.S. 63, 70 (1972) ............ 12, 14

*Graff/Ross Holdings LLP v. Fed. Home Loan Mortg. Corp.*,
   No. 07-796 (RJL)(AK), 2010 WL 6274263 (D.D.C. Aug. 27, 2010) ............ 7

*In re Bilski*,
   545 F.3d 943, 950 (Fed. Cir. 2008) ............ 7, 8, 13

*In re Comiskey*,
   554 F.3d 967, 980 (Fed. Cir. 2009) ............ 14

*In re Ferguson*,
   558 F.3d 1359, 1364 (Fed. Cir. 2009) ............ 8, 13

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S.Ct. 1289, 1297 (2012) ............ 11

*SiRF Tech., Inc. v. lTC*,
   601 F.3d 1319, 1333 (Fed. Cir. 2010) ............ 8

**Statutes**

35 U.S.C. Section 101 ............ 1, 6, 7, 9, 13, 15, 16

Federal Rule of Civil Procedure 1 ............ 6

Federal Rule of Civil Procedure 12(c) ............ 6

**Other Authorities**

5B Charles Alan Wright & Arthur R. Miller,
   Federal Practice and Procedure § 1342 (3d ed. 2004) ............ 6

I.     **SUMMARY OF ARGUMENT**

U.S. Patent No. 8,069,073 (the "'073 Patent") does not claim patent-eligible subject matter.[1] It is invalid, therefore, under 35 U.S.C. Section 101. Several recent cases from the U.S. Supreme Court and the Federal Circuit confirm that covering abstract ideas in a veneer of computer implementation does not render the abstract ideas patentable. The Supreme Court confirmed as much in *Bilski v. Kappos*, 130 S. Ct. 3218 (2010), holding that abstract ideas are unpatentable. Claims must set forth meaningful limitations to make an abstract, unpatentable concept a concrete, patentable invention. Recent Federal Circuit cases applying *Bilski* demonstrate that merely implementing well known methods and processes with the aid of general-purpose computers does not make the abstract ideas patentable.

The '073 Patent claims only the abstract idea of "multilateral analyses" of "preference data" and computing a "closeness of fit value" based on those analyses. Put differently, the '073 Patent claims retrieving a stored list of preferences provided by one party, retrieving a similar stored list of preferences from another party, comparing the lists to determine how closely the preferences of the first party match the preferences of the second party, and generating a list to the parties. Marriage matchmakers (as only one example) have been performing this function for centuries without the aid of computers.

The '073 Patent contains nine method claims—one independent claim and eight dependent claims. Independent Claim 1 claims three processes that any general-purpose computer can be programmed to perform: 1) retrieving two sets of data: one from a consumer and one from sellers/service providers; 2) analyzing the data sets to provide a closeness-of-fit between a

---

[1] A nearly identical motion is being filed concurrently in the related case No. 13 cv 3599.

1.

consumer and the sellers/service providers; and 3) providing a list matching the consumer with at least one seller/service provider.

Although the claims recite the terms "computer-implemented," "computer," and "digital storage medium," these are merely generic recitations of general-purpose computers. People can—and have—performed all the steps of the claims in the '073 Patent manually. On their face, not a single limitation claims a special-purpose computer necessary to perform the steps. Indeed, the specification does not mention a computer at all when discussing the embodiments in Figures 1 and 2, and says plainly that the processors and analyzers of the embodiment in Figure 3:

> [M]ay be implemented as computer processes running on *multiple computers* in communication with one another (for example over a network, including the Internet), or as processes running on a *single computer*.

'073 Patent 3:66-13:9; 13:43:46 (emphasis added).

In addition, the '073 specification says that embodiments of the invention "may employ conjoint analysis" as the "multilateral analyses" in the third limitation of Claim 1. Indeed, the specification explicitly says that one can use conjoint analysis as multilateral analysis:

> [A]nd delivering a list matching at least one party and the at least one counterparty according to analysis of preference profiles determined using conjoint analysis of the party responses and the counterparty responses.

'073 Patent 1:63-67. The specification also establishes "Commercial Use of Conjoint Analysis" as far back as 1982, seventeen years *before* the filing of the priority patent application to the '073 Patent. '073 Patent 3:13-24.

Moreover, none of the claims disclose transformation of any article into a different state or thing. Merely adding the term "computer" to a claim does not render it patentable. Because the '073 Patent claims nothing more than the abstract idea of a consumer and a seller/service provider deciding to do business together, it is invalid on its face.

No discovery is needed to resolve the patentability of the claims and there are no claim construction issues that bear on the issue of abstract ideas being unpatentable subject matter. Accordingly, the Court should enter judgment on the pleadings to preserve its resources and the resources of the parties and to avoid unnecessary litigation.

## II.  STATEMENT OF FACTS

The '073 Patent issued on November 29, 2011, to inventors Eileen C. Shapiro and Steven J. Mintz. Claim 1 of the '073 Patent reads:

> A computer-implemented method for facilitating evaluation, in connection with the procurement or delivery of products or services, in a context of at least one of (i) a financial transaction and (ii) operation of an enterprise, such context involving a first class of parties in a first role and a second class of counterparties in a second role, the method comprising:
>
> in a first computer process, retrieving first preference data from a first digital storage medium, the first preference data including attribute levels derived from choices made by at least one of the parties in the first class;
>
> in a second computer process, retrieving second preference data from a second digital storage medium, the second preference data including attribute levels derived from choices made by at least one of the counterparties in the second class;
>
> in a third computer process, for a selected party, performing multilateral analyses of the selected party's preference data and the preference data of each of the counterparties, and computing a closeness-of-fit value based thereon; and
>
> in a fourth computer process, using the computed closeness-of-fit values to derive and provide a list matching the selected party and at least one of the counterparties.

'073 Patent 18:32-55.

The specification describes that the invention is nothing more than a system by which parties evaluate whether a proposed transaction is beneficial to them. Figure 1 is an exemplary embodiment:



FIG. 1

As demonstrated above, the patent contemplates two parties to a transaction: a party and one or more counterparties. In the Fig. 1 embodiment, the underlying transaction is between a person and an organization. '073 Patent 4:62-63. The person seeks entry into an organization that is a good fit relative to other organizations, while the organization seeks to admit a person that will be successful. '073 Patent 4:63-5:1. The embodiment then contemplates asking questions of each party to create a "preference profile" for the party and counterparty. '073 Patent 5:6-17. The embodiment then analyzes the preference profiles for a "closeness-of-fit" between the profiles of the party and counterparty. '073 Patent 5:17-19. The transaction may also involve two organizational parties (rather than a person and an organization) or two people. '073 Patent 5:26-49. In addition, the parties may elicit input from "co-evaluators," who similarly answer questions to provide a "useful perspective on the party or counterparty's preference profile." '073 Patent 10:63-64.

The specification discloses any number of situations that can use the claimed methods:

- "enrollment at a college or university or a private school …";[2]
- "employment by an entity …";[3]
- "engagement of a physician or health maintenance organization …";[4]
- "choosing a retirement community";[5]
- "investing in a mutual fund";[6]
- "taking a vacation";[7]

---

[2] '073 Patent 3:35-37; see also '073 Patent 5:2-3; 10:51-58.
[3] '073 Patent 3:37-39; see also '073 Patent 5:4-5; 12:54-58.
[4] '073 Patent 3:39-41.
[5] '073 Patent 3:41.
[6] '073 Patent 3:41-42
[7] '073 Patent 3:42

5.

- "in executing a merger or joint venture or acquisition";[8] or
- labor negotiations.[9]

While the specification provides that the analysis may be performed by a computer (or multiple computers), '073 Patent 13:10-18:24, people can also perform such analysis *manually*. '073 Patent 3:66-13:9. Indeed, as the exemplar transactions above amply demonstrate, people have performed such analysis manually for centuries.

### III.  ARGUMENT

The '073 Patent recites an abstract, and ancient, idea of parties evaluating whether they are a good fit for each other. Recent case law establishes that such abstract ideas are not patentable under 35 U.S.C. § 101.

#### A.  Legal Standard

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "The objective of Federal Rule 12 is to expedite and simplify the pretrial phase of federal litigation ...." 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1342 (3d ed. 2004). Rule 12 furthers the mandate in Federal Rule 1 for "the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. By making this motion early in the proceedings, Defendants hope to resolve this matter as quickly and efficiently as possible.

The Court should grant judgment on the pleadings when the moving party establishes that, even if all of the facts pled are true, the moving party is entitled to judgment as a matter of law. *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). In resolving this motion, Plaintiff's allegations are assumed to be true and all reasonable inferences should be drawn in Plaintiff's

---

[8] '073 Patent 3:42-43; see also '073 Patent 5:30; 5:43; 10:58-62.
[9] '073 Patent 5:59-6:1; 12:39-41.

-
-

favor. *Id.* There are no factual issues relevant to this motion; judgment of invalidity based solely on the pleadings in this case is warranted because the '073 Patent is invalid on its face.

The question of whether the '073 Patent is drawn to patent-eligible subject matter is a "threshold inquiry." *In re Bilski*, 545 F.3d 943, 950 (Fed. Cir. 2008), *aff'd, Bilski v. Kappas*, 130 S. Ct. 3218 (2010). Thus, where a patent that is invalid on its face has been and no discovery or extraneous facts are needed, judgment on the pleadings should be issued. *See, e.g., CLS Bank Int'l v. Alice Corp. Pty. Ltd.*, 768 F. Supp. 2d 221 (D.D.C. 2011), *aff'd CLS Bank Int'l v. Alice Corp. Pty. Ltd.*, 717 F.3d 1269 (Fed. Cir. 2013); *Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Can.*, 771 F. Supp. 2d 1054 (E.D. Mo. 2011); *Glory Licensing LLC v. Toys R Us, Inc.*, No. 09-4252 (FSH), 2011 WL 1870591 (D.N.J. May 16,2011); *CyberSource Corp. v. Retail Decisions, Inc.*, 620 F. Supp. 2d 1068 (N.D. Cal. 2009), aff'd, 654 F.3d 1366 (Fed. Cir. 2011); *Graff/Ross Holdings LLP v. Fed. Home Loan Mortg. Corp.*, No. 07-796 (RJL)(AK), 2010 WL 6274263 (D.D.C. Aug. 27, 2010) (Report and Recommendation of Magistrate Kay).

**B.     The '073 Patent Is Invalid Under 35 U.S.C. § 101**

The '073 Patent does not disclose "any new [or] useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. As such it is not valid under 35 U.S.C. § 101. Although Section 101 is broad and provides liberally for patentable subject matter, it is not limitless. Over the years case law has developed three well-known exceptions to patentable subject matter under 35 U.S.C. § 101: (1) laws of nature; (2) physical phenomena; and (3) abstract ideas. *See, e.g., Bilski*, 130 S. Ct. at 3225. These exceptions are consistent with and reinforce Section 101's mandate for "new and useful" inventions. *See id.*

Courts have developed a number of tests to assist in deciphering an abstract idea from a patentable process. While there is currently no single "per se" test to distinguish abstract ideas from patentable processes, the machine-or-transformation test comes closest. *See id.* at 3221. The machine-or-transformation test makes two inquiries about an invention: (1) is the invention tied to a particular machine or apparatus and (2) does the invention transform a particular article into a different state or thing? If the answer to those questions is no, the invention is not patentable. *Id.*

7.

Unnecessary or non-limiting language is not enough to satisfy the test. The use of a specific machine or a specific transformation "must impose meaningful limits on the claim's scope to impart patent-eligibility." *In re Bilski*, 545 F.3d at 961-62.

A machine will only "impose a meaningful limit on the scope of a claim [when it plays] a significant part in permitting the claimed method to be performed, rather than function solely as an obvious mechanism for permitting a solution to be achieved more quickly, i.e., through the utilization of a computer for performing calculations." *SiRF Tech., Inc. v. ITC*, 601 F.3d 1319, 1333 (Fed. Cir. 2010). A computer is not a significant part of the process if that process can be performed without a computer. *See CyberSource*, 654 F.3d at 1375 ("[M]erely claiming a software implementation of a purely mental process that could otherwise be performed without the use of a computer does not satisfy the machine prong of the machine-or-transformation test."). The '073 Patent fails the machine-or-transformation test. In the '073 Patent, a machine does not play a significant part in performing the claimed method; it merely permits the claimed solution to be performed more quickly. In addition, the '073 Patent does not transform any particular article. Even apart from the machine-or-transformation test, the '073 Patent is invalid because it claims an abstract idea, which is a legally-recognized exception to patentability.

    1.    <u>The only independent claim of the '073 Patent fails the machine-or-transformation test.</u>

        a. *Claim 1 is not tied to any particular machine.*

Claim 1 is not tied to any particular machine. To pass the machine portion of the machine-or-transformation test, claims must be tied to a "concrete" machine, one with "parts" or "certain devices" or a combination of devices. *SiRF Tech., Inc*, 601 F.3d at 1332 (*citing In re Ferguson*, 558 F.3d 1359, 1364 (Fed. Cir. 2009)). Merely adding computer limitations to claims of generic recitations of a well-known method is not enough and "not every patent that recites a machine... passes the machine-or-transformation test." *Bancorp. Servs.*, 771 F. Supp. 2d at 1063; *see also Accenture Global Servs. GmbH v. Guidewire Software, Inc.*, 691 F. Supp. 2d 577, 597-98 (D. Del. 2010). As the Federal Circuit sitting *en banc* recently noted, "adding generic computer functions